IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BEYAUNA E. BILLINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION FILE |
| v. | § | |
| | § | NO. 1:04 CV 3522-JEC |
| STARWOOD REALTY, CMBS, I, LLC, | § | |
| STARWOOD OPERATOR I, LLC, d/b/a | § | |
| SHERATON MIDTOWN ATLANTA HOTEL, | § | |
| and THE SHERATON CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## BRIEF IN SUPPORT DEFENDANTS' MOTION IN LIMINE
## TO EXCLUDE SPECIAL DAMAGES AND JOHN ROGERSON, M.D.

Defendants submit this Brief in support of their motion to exclude all evidence of special damages and the testimony of Dr. John Rogerson.

### SUMMARY OF ARGUMENT

Defendants move to exclude all evidence of special damages, including lost wages, medical expenses and costs of litigation, on the grounds that plaintiff never provided a computation of these categories of damages as required by Fed. R. Civ. P. 26(a)(1)(C) and as specifically requested via interrogatories from Defendants. As a result, Defendants have no information about the nature or extent of plaintiff's alleged damages and have been precluded from pursuing any discovery on these issues.

Defendants also move to exclude Dr. John Rogerson, plaintiff's orthopedic surgeon, on the grounds that he was not properly disclosed by name, address and telephone number during the discovery period that ended on August 22, 2005 even though plaintiff had been treating with him since at least June 10, 2005. As a result, Defendants were unable to obtain any medical records directly from Dr. Rogerson, Defendants did not have the benefit of Dr. Rogerson's medical records for use in examining plaintiff during her deposition on August 1, 2005, and Defendants were precluded from being able to take his deposition during discovery.

**ARGUMENT AND CITATION OF AUTHORITY**

I.      **Any and all evidence of special damages, including lost wages, medical expenses and costs of litigation, should be excluded since plaintiff never provided a computation of any category of damages.**

Defendants move to exclude any evidence of special damages in this case because plaintiff has failed to identify them and provide a calculation as required by the Court's Initial Disclosures and Fed. R. Civ. P. 26(a)(1)(C). This Court's Local Rules require plaintiff to make the initial disclosures required by Fed. R. Civ. P. 26(a)(1), using the "Initial Disclosures" form prepared by the Court, within thirty days after the appearance of the first defendant by answer. LR 26.1(A) and

(B), NDGa.   In this case, plaintiff's Initial Disclosures were
due no later than January 21, 2005.   Plaintiff did not file her
Initial Disclosures until July 15, 2005, and then only after
being threatened with dismissal by the Court.

The   Initial   Disclosures   that   must   be   made   by   plaintiff
require the following:

> [ ]  provide  a  computation  of  any  category  of
> damages  claimed  by  you.   In  addition,  include  a
> copy of, or describe by category and location of,
> the documents  .  .  .  on which such computation is
> based, including materials bearing on the nature
> and extent of injuries suffered  .  .  ..

Initial   Disclosure   No.   6.     Plaintiff's   responded   to   this
disclosure as follows:

> Plaintiff has provided Defendants with copies of
> medical expenses incurred by her.

Plaintiff's  Initial  Disclosure  No.  6.  (A  copy  is  attached  as
Exhibit  1).    The  only  category  of  damages  that  plaintiff  even
alluded to in her Initial Disclosure No. 6 was medical expenses.
On  that  ground  alone,  all  other  claimed  damages  should  be
summarily dismissed.

Rule  37  provides  an  automatic  sanction  of  exclusion  to
information or witnesses that are not disclosed:

> A  party  that  without  substantial  justification
> fails  to  disclose  information  required  by  Rule
> 26(a)  or  26(e)(1),  or  to  amend  a  prior  response
> to  discovery  as  required  by  Rule  26(e)(2),  is
> not,  unless  such  failure  is  harmless,  permitted

> to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).   The Advisory Committee Notes to Rule 37 clarify the mandatory nature of this sanction:

> The [1993 amendments] provides a **self-executing sanction for failure to make a disclosure required by Rule 26(a)**, without need for a motion under subdivision (a)(2)(A).   Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). Automatic sanctions provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence . . . .

See, Advisory Committee Notes, 1993 Amendment to Rule 37, subdivision (c) (emphasis added).   For purposes of Rule 37, "an invasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."   Fed. R. Civ. P. 37(a)(3).   The burden is on the party facing sanctions, plaintiff in this case, to prove that the nondisclosure was substantially justified and harmless to Defendants.   See Yety By Mali, Ltd. v. Deckers Outdoor Court, 259 F.3d 1101, 1107 (9th Cir. 2001); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001).

Other courts have not hesitated to exclude damages in similar situations, even where such exclusion had the practical effect of dismissing the claims.   In Ware Communications, Inc.

v. Rodale Press, Inc., 2002 WL 89604 (E.D. Pa. 2002), the
district court granted defendant's motion to exclude evidence of
damages. Although the net effect of this ruling was to act as a
dismissal of plaintiff's entire claim, the court found exclusion
proper because defendants were clearly prejudiced by plaintiff's
failure to provide specific information and documentation
concerning the damages calculation in a timely fashion. The
court also found:

> the general failure of Plaintiff's counsel to
> supplement discovery as promised and as required
> by the Federal Rules intimates bad faith. Based
> on the age of the case and the numerous
> extensions of the scheduling order, Plaintiff's
> counsel "can hardly complain that [he] had
> inadequate time to provide the desired reports.
> Nor can plaintiff's counsel claim that the
> potential exclusion of the untimely provided
> damages evidence caught him by surprise.

Id. at *5 (cits. omitted). The court further justified the
sanction as appropriate:

> In the instant case, no other sanction will
> remedy the prejudice to defendant. Defendant has
> been deprived of its opportunity to examine the
> damages claim in full. . . . At this stage in
> the litigation, it is neither appropriate nor
> judicially economical to reopen discovery one
> year after its close to allow defendants
> appropriate time to investigate the damages
> calculation.

Id.

Similarly in this case, no sanction other than exclusion will remedy the prejudice to Defendants. The incident occurred almost three years ago. The lawsuit was filed eleven months ago. Plaintiff had more than enough time to assemble and calculate her alleged damages, and plaintiff's counsel cannot claim surprise since defense counsel expressly put them on notice that Defendants would seek to exclude this evidence if it was not produced. See Ex. A-9 attached to Tidwell Affidavit[1]. Defendants have been deprived of the opportunity to analyze the claimed damages in full, and plaintiff has not provided any substantive documentation or other support for whatever damages she is claiming.

Although this motion is directed at any and all claims for damages, Defendants will address specifically the three general categories that were referenced in the complaint – medical expenses, lost wages and costs of litigation.

### a.   Medical Expenses

Medical expenses is the only category of damages that plaintiff even arguably disclosed as a category of claimed damages. However, plaintiff admitted that she has not done any

---

[1] The affidavit of Thomas G. Tidwell and accompanying exhibits are attached as Exhibit A to the "Brief in Support of Defendants' Motion in Limine to Exclude Plaintiff's Expert, Jeffrey Gross" and filed with the Court on September 19, 2005.

type of calculation of medical expenses even though she has been saving her medical bills.   Deposition of Beyauna Billings, p. 184, ln. 19 - p. 186, ln. 2 (relevant pages are attached as Exhibit 2).   Despite her admission to having received and retained her medical bills, only seven pages of invoices (covering one doctor visit in March, 2003 and three visits in and May, 2003) were produced to Defendants.   Copies of these seven pages are attached as Exhibit 3.   None of the invoices indicate who the patient is (one is addressed to plaintiff Billings, the others to her father Bruce Billings), and none of the invoices describe the medical treatment provided.   At least one of the bills has the same date as when plaintiff sought treatment for reflux, a pre-existing condition that has absolutely no relation to her alleged shoulder injury.   Thus, it is not clear if plaintiff is seeking to recover for each invoice produced, which seems unlikely, or only some of them.   Each invoice has several different amounts (one for the doctor, one for the insurance company and one for the patient), and it is not clear what portion of each invoice plaintiff is claiming as damages.   It is not for Defendants to speculate, or even to make educated guesses, as to the amount of damages claimed by plaintiff.   The Rules expressly put the burden of disclosing damages on the plaintiff.

Plaintiff was obligated to provide a calculation of the medical expenses which she seeks to recover in Initial Disclosure No. 6.    Plaintiff was obligated to identify supporting documentation, such as medical bills, in Initial Disclosure No. 6 and produce these documents in response to Defendants' Request for Production of Documents Nos. 2 and 23. Plaintiff did none of this.

Plaintiff's omissions cannot be justified.   The Rules are clear and apply to everyone.   Plaintiff cannot claim ignorance nor surprise by the instant motion.   Defense counsel expressly advised plaintiff's counsel that plaintiff had not fulfilled her obligations and warned that Defendants would seek exclusion of this evidence if the deficiencies were not corrected:

> It appears from plaintiff's testimony that she has medical bills and medical records in her possession that have not been produced in discovery.    As you know, we have had some difficulty getting complete records from all of the medical providers.   Therefore, in order to make sure we have a complete set of plaintiff's medical records, we ask that you produce all such records in her possession.    Of particular importance is the form filled out by Dr. Edwards and apparently attached to plaintiff's nursing school application.

>  .  .  .

> I want you to know that if the deficiencies outlined above are not corrected, we intend to take full advantage of the self-executing sanctions available pursuant to Fed. R. Civ. P.

> 37 and LR 26.2, NDGa.   I look forward to hearing
> from you shortly.

Ex. A-9, attached to Tidwell Affidavit.

The harm to Defendants is self-evident.   Defendants have not been able to depose plaintiff or her medical providers on the reasonableness of the bills themselves or the necessity of the treatment encompassed therein.   Therefore, the automatic exclusion of Rule 37 should apply, and plaintiff should not be allowed to present any evidence regarding medical expenses.

### b.   Lost wages

Plaintiff never disclosed lost wages as a category of damages that she was seeking to recover.   However, since plaintiff raised this issue in her complaint, Defendants propounded specific interrogatories addressing the issue of lost wages and asked plaintiff to identify the specific "date(s) on which you lost wages or salary."   Defendant's Interrogatory No. 8.   (A copy is attached as Exhibit 4.)   In response, plaintiff stated:

> Yes.   Plaintiff has lost wages from the
> following employers for the following dates:
>
> Copps Grocery Store, 5/28/2004 – 8/12/2004,
> plaintiff was unable to lift parcels with
> her shoulder injury, was unable to work for
> extended periods of time and eventually was
> eased off of the schedule since she was no
> longer able to work at the same level as
> before.

Plaintiff's Response to Interrogatory No. 8 (A copy is attached as Exhibit 5).

Nowhere does plaintiff identify the specific dates on which she was unable to work. Nowhere does plaintiff identify the number of hours she was unable to work. Nowhere does plaintiff calculate the total amount of wages that she claims was lost. During her deposition, plaintiff admitted that she had not done any calculation of the total lost wages she allegedly lost. Billing Depo. p. 174, ll. 7-9 (Ex. 2). Nevertheless, Defendants attempted to elicit the nature and extent of her lost wage claim at her deposition. See Billings Depo., pp. 46-56. Plaintiff's deposition testimony did nothing to clarify the extent of her lost wage claim but rather confused matters more.

In Olson v. Bade, 2001 WL 337869 (9th Cir. 2001), the bankruptcy court's decision to exclude plaintiff's damages calculation was upheld because the calculations were "too disorganized, incomplete and confusing to satisfy the disclosure requirements of Rule 26." Id. at **1. A simple review of plaintiff's deposition testimony demonstrates that her claim for lost wages is equally disorganized and confusing.

During the summer immediately following her alleged injury, plaintiff admitted to working full-time, 45 hours per week, at a 5-week program called PEOPLE. Billings Depo., pp. 52-53. During

this time frame, she initially testified that she did not work at all at Copps (Billings Depo., p. 50, ll. 10-21), but later she testified that she did work on the weekends, (Billings Depo., p. 54, ln. 1 - p. 55, ln. 10), and then later she claimed "I was working every single day." Billings Depo., p. 174, ll. 18-21. Initially, plaintiff testified that she was working about 20-25 hours a week at Copps (Billings Depo., pp. 48-49), but later she testified that she filled in for others and actually worked more hours, although she was unable to quantify how many additional hours. Billings Depo., p. 176, ll. 5-16.

In sum, Defendants have no idea what, if any, lost wages plaintiff is claiming in this action. It appears that plaintiff was working as many hours as she possibly could, frequently in excess of fifty hours a week. The real question is not how much work plaintiff missed, but how much additional work plaintiff actually did that she has not accounted for so far.

Not only did plaintiff fail to provide a calculation of lost wages, she also failed to produce supporting documentation in response to Defendants' Requests to Produce Nos. 3 and 23. During her deposition, plaintiff relied on a date book to try to ascertain dates when she was allegedly unable to work. A copy of the date book was requested at the deposition (Billings Depo., p. 48, ll. 5-9) and in a follow-up letter to plaintiff's

counsel.  See Tidwell Aff. ¶ 21, and Ex. A-9.  Plaintiff never produced the date book.  Plaintiff also admitted that she is in possession of documents such as paycheck stubs and W-2 forms that relate to her income during the relevant time frame. Billings Depo., pp. 178-179.  Presumably, there are also bank statements that would evidence deposits, both by amount and date.  None of these documents have been produced, although they are directly responsive to Initial Disclosure No. 6 and Defendants' Request to Produce No. 3.

All of this information was needed by Defendants to evaluate the case for settlement purposes and to defend the lost wage claim.  Until Defendants knew the nature and extent of her lost wage claim, they were unable to pursue other discovery which could diminish or eliminate this item of damages. Defendants even advised plaintiff's counsel of the need for this information:

> I would also point out that plaintiff is
> obligated under the Federal Rules to provide a
> computation of all claimed damages.  The failure
> of plaintiff to provide this information in
> advance of her deposition has seriously
> prejudiced defendants' ability to evaluate and
> defend this case.  I would suggest that plaintiff
> provide this information immediately so that we
> can schedule a follow-up deposition of plaintiff,
> and if necessary the depositions of her employers

> in Wisconsin, before the close of discovery on
> August 22.

Ex. A-9 to Tidwell Affidavit.

Unless and until Defendants know the dates and the number of hours when plaintiff claims she was unable to work, it would be premature to take the depositions of plaintiff's employers because plaintiff has not taken a position that can be confirmed or contradicted by her employer. Moreover, it would not be cost efficient to spend thousands of dollars deposing plaintiff's employers in Wisconsin if the total lost wage claim consisted of only a few hours of work, less than $100.

To the extent plaintiff wanted to pursue a claim for lost wages, she was obligated to disclose this as a category of damages in her Initial Disclosure No. 6; she was obligated to provide a calculation of the alleged lost wages, both in her Initial Disclosure No. 6 and in response to Defendants' Interrogatory No. 8; and she was obligated to identify supporting documents in her Initial Disclosure 6 and produce them in response to Defendants' Request for Production of Documents Nos. 3 and 23. Plaintiff did none of this.

Plaintiff knew this was an issue when she filed the complaint, and she knew defendants needed this information to pursue additional discovery. Instead of fulfilling her

discovery obligations, she provided a "disorganized, incomplete and confusing" story on damages that completely fails to satisfy the disclosure requirements or to be of any assistance to Defendants in defending this claim.   Plaintiff's failure to disclose a calculation of her lost wages and the supporting documentation has severely prejudiced defendants.   Therefore, Defendants respectfully request that all evidence and argument relating to lost wages be excluded pursuant to Fed. R. Civ. P. 37(c).

### c.   Costs of Litigation and Attorney's Fees

Plaintiff asserted a claim for costs of litigation and attorney's fees pursuant to O.C.G.A. § 13-6-11.   Plaintiff did not disclose costs of litigation and attorney's fees as a category of damages in her Initial Disclosures pursuant to Rule 26(a)(1)(C), nor did she provide any calculation of this category of damages.

On January 12, 2005, Defendants sent interrogatories to plaintiff requesting that she "provide a detailed itemization of litigation expenses incurred to date, including attorney's fees."  Defendant's Interrogatory No. 21 (Ex. 4).   In response, plaintiff stated:

> Plaintiff's fee agreement with her attorneys is 33 1/3 of all monies recovered once suit has been filed.   Plaintiff will have to

> supplement this response with respect to the
> attorneys fee and the itemization of
> litigation expenses to date prior to trial.

Plaintiff's Response to Interrogatory No. 21 (Ex. 5). Plaintiff never supplemented this response nor provided any additional information regarding her attorney's fees and litigation costs.

Defendants also requested production of documents supporting plaintiff's claims for litigation costs and attorneys' fees, including the fee agreement. See Defendants' Request for Production of Documents Nos. 18 and 19 (A copy is attached as Exhibit 6). Plaintiff objected on the grounds of attorney-client privilege and attorney work-product. (Plaintiff's Response is attached as Exhibit 7). "The attorney-client privilege does not shield fee arrangements." Montgomery County v. Microvote Corp., 175 F.3d 296, 304 (3d Cir. 1999); see also Porter v. NationsCredit Consumer Disc. Co., 2004 U.S. Dist. LEXIS 13641 (D. Pa. 2004).

To the extent plaintiff wanted to pursue a claim for litigation costs and attorney's fees, she was obligated to disclose this in her Initial Disclosure No. 6; she was obligated to provide a calculation of the alleged damages, both in Initial Disclosure No. 6 and in response to Defendants' Interrogatory No. 21; and she was obligated to identify supporting documents in Initial Disclosure 6 and produce them in response to

Defendants' Request for Production of Documents Nos. 18, 19 and 23. Plaintiff did none of this. Therefore, for all the reasons set forth above, plaintiff should not be allowed to present any evidence regarding costs of litigation and attorneys' fees.

**II.     Plaintiff should be precluded from presenting testimony from Dr. John Rogerson since he was not properly disclosed during discovery.**

Both this Court's Local Rules and the Federal Rules require plaintiff to disclose "the name, and if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses." Plaintiff's Initial Disclosures No. 3; LR 26.1, NDGa.; Fed. R. Civ. P. 26 (a)(1)(A). Defendants' also propounded interrogatories that requested plaintiff to:

> Please identify by name and address each medical care practitioner or clinic from whom/which you received care and/or treatment for injuries which you contend were caused by the incident set forth in your complaint.

Defendants' Interrogatory No. 7 (Ex. 4).

Plaintiff began treating with an orthopedic surgeon named Dr. John Rogerson at least by June 10, 2005, and perhaps earlier. Tidwell Aff. ¶ 27. However, plaintiff did not identify Dr. Rogerson in her Initial Disclosures, which were filed on July 15, 2005. Plaintiff also failed to identify Dr. Rogerson in response to Defendants' Interrogatory No. 7 nor did

she ever supplement her response in accordance with Fed. R. Civ.
P. 26(e).   In fact, plaintiff has never formally disclosed Dr.
Rogerson as a witness in any discovery response.

It was only by pure happenstance that Defendants even
learned of Dr. Rogerson's existence.   On July 18, 2005,
plaintiff's counsel sent an email indicating that plaintiff was
scheduled for a pre-operative visit with an unnamed orthopedic
surgeon.   Tidwell Aff. ¶ 23, and Ex. A-17.   Since defense
counsel was aware that none of the doctors previously disclosed
by plaintiff were recommending surgery, Defendants sent an email
to plaintiff's counsel the next day, July 19, asking for the
identity of this new doctor.   Tidwell Aff. ¶ 24, and Ex. A-18.
On July 27, two business days before plaintiff's scheduled
deposition, plaintiff responded by providing the name, but not
the address or telephone number, of Dr. Rogerson.   Tidwell Aff.
¶ 25, and Ex. A-19.

On August 2, Defendants sent a letter to plaintiff
reminding her of her discovery obligations regarding disclosure
of witnesses.   Specifically regarding Dr. Rogerson, Defendants
wrote:

> Ms. Billing's most recent orthopedic surgeon that
> she has been seeing for the past two months, who
> I believe she identified in her deposition as Dr.
> Rogerston [sic], has not been properly disclosed
> or identified.   The failure of plaintiff to

> provide this information in advance of her deposition has seriously prejudiced defendants' ability to take a complete deposition and prepare an adequate defense. I would suggest that plaintiff provide the complete information immediately so that we can obtain whatever medical records that may exist and schedule a follow-up deposition of plaintiff, and if necessary, the deposition of Dr. Rogerston [sic] in Wisconsin.

Tidwell Aff. ¶ 26, and Ex. A-9.

Plaintiff never responded to this letter nor supplemented her Initial Disclosures or Interrogatory responses to properly identify Dr. Rogerson during discovery. Tidwell Aff. ¶ 26. However, on August 31 - three months after plaintiff began treating with Dr. Rogerson, one month after Defendants' request for information and more than a week after discovery ended - plaintiff produced approximately 10 pages of medical records from Dr. Rogerson. Id. at ¶ 27. This was the first time Defendants received any information regarding Dr. Rogerson's address and telephone number that would allow Defendants to request his medical records, talk to him about his opinions and/or schedule his deposition. Id.

Once again, plaintiff cannot claim that her omissions were justified. Her attorneys are presumed to know the law, but just in case, defense counsel notified plaintiff that Dr. Rogerson had not been properly disclosed or identified and further warned

that if this deficiency was not corrected, Defendants would seek to exclude him from evidence. Once again, the harm to Defendants is self-evident. Defendants did not have Dr. Rogerson's medical records at the time of plaintiff's deposition and thus were unable to examine plaintiff on her treatment with him. Defendants were precluded from obtaining Dr. Rogerson's medical records or taking his deposition during discovery. It seems strangely coincidental that the identity of the only doctor who was recommending surgery was withheld from Defendants during discovery.

Plaintiff was obligated to disclose the identity of Dr. Rogerson in her Initial Disclosure No. 3 and in response to Defendants' Interrogatory No. 7. Plaintiff did none of this, even ignoring Defendants' written request for information. Therefore, for all the reasons set forth above, plaintiff should be barred, pursuant to Fed. R. Civ. P. 37(c), from using the testimony or medical records of Dr. Rogerson at any trial, hearing or motion.

### Certification

Pursuant to LR 7.1(D), the undersigned hereby certifies that that foregoing brief was prepare using Courier New 12 point font and complies with all other formatting requirements of LR 5.1, NDGa.

Respectfully submitted, this 22nd day of September, 2005.

KASOWITZ, BENSON, TORRES & FRIEDMAN

Thomas G. Tidwell
Georgia Bar No. 712110

One Midtown Plaza - Suite 1150
1360 Peachtree Street, N.E.
Atlanta, GA 30309
404-260-6080                    Counsel for Defendants

5031150                    - 20 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BEYAUNA E. BILLINGS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION FILE |
| v. | § | |
| | § | NO. 1:04 CV 3522-JEC |
| STARWOOD REALTY, CMBS, I, LLC, | § | |
| STARWOOD OPERATOR I, LLC, d/b/a | § | |
| SHERATON MIDTOWN ATLANTA HOTEL, | § | |
| and THE SHERATON CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE SPECIAL DAMAGES AND JOHN ROGERSON, M.D. and BRIEF IN SUPPORT** on all parties to this action via electronic filing with the Clerk of the Northern District of Georgia to:

William P. Claxton
Darcy S. DuVal
CLAXTON & CLAXTON, LLC
Suite 115
180 Interstate North Parkway
Atlanta, GA 30339-2102

This 22nd day of September, 2005.

Thomas G. Tidwell
Georgia Bar No. 712110

5031150