IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 13 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

BEYAUNA E. BILLINGS,

    Plaintiff,

v.

STARWOOD REALTY, CMBS, I, LLC,
STARWOOD OPERATOR I, LLC, d/b/a
SHERATON MIDTOWN ATLANTA HOTEL,
and THE SHERATON CORPORATION,

    Defendants.

CIVIL ACTION NO.

1:04-CV-3522-JEC

## ORDER & OPINION

This case is presently before the Court on plaintiff's Motion for Extension of Discovery Period [52]; Plaintiff's Motion for Summary Judgment [59]; Defendants' Motion for Summary Judgment [60]; Defendants' Motion in Limine to Exclude Plaintiff's Expert, Jeffrey Gross [62]; AND Defendants' Motion in Limine to Exclude Special Damages and John Rogerson, M.D. [63]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Extension of Discovery Period [52] should be **DENIED**; Plaintiff's Motion for Summary Judgment [59] should be **DENIED**; Defendants' Motion for Summary Judgment [60] should be **GRANTED**; Defendants' Motion in Limine to Exclude

Plaintiff's Expert, Jeffrey Gross [62] should be **DENIED as moot**; AND Defendants' Motion in Limine to Exclude Special Damages and John Rogerson, M.D. [63] should be **DENIED as moot**.

## BACKGROUND

This case arises out of a slip and fall which occurred on March 11, 2004, in the bathtub of Room 1708 at the Sheraton Midtown Hotel located in Atlanta, Georgia. (Statement of Material Facts Which are Undisputed ("PSMF") [59] at ¶ 1.)  The Sheraton Midtown Atlanta Hotel ("the Hotel") is managed and operated by defendant Starwood Operator I, LLC. (Defs.' Statement of Material Facts, etc. ("DSMF") [60] at ¶ 1.)

At the time of the incident, plaintiff Beyauna E. Billings was a guest staying at the hotel. (PSMF at ¶ 2.)  Having slept in the hotel the previous night, on the morning of March 11th, plaintiff attempted to take her first shower.  Plaintiff's roommate, Courtney Barfield, had just taken a shower without incident. (DSMF at ¶ 7.) As plaintiff was stepping into the back of the bathtub, she slipped and fell. (PSMF at ¶ 4.)  The parties agree that when plaintiff fell, Room 1708 did not have either a shower or bath mat inside the tub, but dispute whether or not the bathtub, itself, had a non-slip surface. (PSFM at ¶¶ 5-6; Defs.' Resp. to Pl.'s Statement of Material Facts ("Resp. PSMF") [72] at ¶¶ 5-6.)

2

On February 16, 2005, plaintiff's expert, Jeffrey H. Gross, conducted an inspection of the bathtub in Room 1708. (PSMF at ¶ 7.) Plaintiff contends that, during this inspection, Mr. Gross performed tests on the surface of the bathtub and took a plaster casting of the bathing surface in order to determine whether or not the bathtub in Room 1708 had any slip-resistant properties. (*Id.* at ¶¶ 7-8.) Mr. Gross observed that the bathtub appeared to have a faint staining in a pattern consistent with a previous, but now absent, slip-resistant surface. (*Id.* at ¶ 10.) Ultimately, Mr. Gross concluded that the bathtub was devoid of any detectable slip-resistant properties and that the Hotel had failed to provide its guests with an industry-accepted slip-resistant bathtub surface. (*Id.* at ¶ 9.)

More specifically, in his first expert "report,"[1] submitted on July 12, 2005, Mr. Gross stated:

> The bathtub inspected at the incident location on 2-16-05 was devoid of any detectable slip-resistant property. There appeared a faint staining in a pattern consistent with a previous, but now absent slip-resistant surface.
>
> Starwood Hotels failed to properly inspect and maintain the bathtub in a reasonably safe condition.
>
> Starwood Hotels failed (sic) provide its guests with an industry accepted slip-resistant bathing surface.
>
> A plaster casting was taken of the bathing surface in order

---

[1] The Court is disinclined to characterize the one-page summary letters issued by Mr. Gross as "reports": hence, the use of quotation marks.

3

to determine the presence or absence of a slip-resistant property.

(Defs.' Mot. in Limine to Exclude Pl.'s Expert, Jeffrey Gross ("Br. Limine Gross") [62] at Ex. A-1.)

On July 15, 2005, defendants wrote to plaintiff's counsel and indicated that they found the above letter to be "deficient" as a report in that it was "unsigned, most likely was not prepared by the expert himself, and it completely fails to provide a detailed outline of the testimony the expert expects to give on direct examination and the basis therefore." (*Id.* at 3.) On July 17, 2005, plaintiff served a supplemental expert report that was essentially the same as the first report, except it was signed and contained an expanded second paragraph. The July 17th report provided:

> Preliminary findings are subject to a completed review of discovery items requested from defendant, but not produced as of this date.
>
> The bathtub was inspected at the incident location on 2-16-05. This inspection included the use of optical magnification of the bathing surface, magnetic response of the bathing surface, illumination and tactile evaluation of the bathing surface. The bathing surface was found to be devoid of any detectable slip-resistant property. There appeared a faint staining pattern consistent with a previous, but now absent slip-resistant surface.
>
> Starwood Hotels failed to properly inspect and maintain the bathtub in a reasonably safe condition. Starwood Hotels failed (sic) provide its guests with an industry accepted slip-resistant bathing surface.
>
> A plaster casting was taken of the bathing surface in order to determine the presence or absence of a slip-resistant

4

property.

(*Id.* at Ex. A-5.)

On August 2, 2005, defendants sent plaintiff a letter outlining once again the deficient nature of the expert "report." (*Id.* at 3.) On August 17, 2005, plaintiff filed a second supplemental expert report. This report provided:

> This supplement to my preliminary findings is a result of my completed review of discovery items requested from defendant, as of this date. Additional discovery may result in additional findings.
>
> Starwood Hotels was aware of the slip hazard associated with their bath tubs prior to 3-11-04 the date of the incident.
>
> Starwood Hotels had established a policy and or procedure for the use of a (non-slip strip) in their bath tubs as referenced in their incident report of 8-21-02.
>
> Starwood Hotels had established a policy and or procedure for the use of (non-slip mats) in their bath tubs as referenced in their incident report of 4-6-03.
>
> Starwood failed to follow their prior policy, procedure or established hotel standard to provide a (non-slip strip) or (non-slip mat) for their guest, Ms. Billings.
>
> Starwood Hotels was aware of the causation of slip and falls as referenced in their on property (Slips, Trips, and Falls) training information.
>
> No slip resistant mat, strip or other material was found in the incident guest room during my inspection on 2-16-05.
>
> No slip resistant mat or strip was provided for the bath tub in Room 1708 on 3-11-04, according to Ms. Billings and the hotel's incident report.
>
> The lack of a proper slip resistant mat or bathing surface

5

was the proximate cause of Ms. Billings fall. (*Id.* at Ex. A-16.)

Plaintiff further contends that the Hotel had no procedure for inspecting its bathrooms to insure that the bathtubs had some slip-resistant surface in place prior to the rooms being rented to guests. (PSMF at ¶ 17.) In support of this position, plaintiff points to the fact that the Hotel's housekeeping training checklist does not contain a line item for inspecting the bathtub. (Pl.'s Resp. to Defs.' Statement of Material Facts, etc. ("Resp. DSMF") [69] at ¶ 9.) The Hotel contends the opposite: that its bathrooms were inspected by housekeepers and other hotel employees who are trained to report and/or remedy any potential slip-and-fall hazards they may discover. (Resp. PSMF at ¶ 17.) The Hotel indicates that no employee ever reported a potential problem with the bathtub in Room 1708. (DSMF at ¶ 9.) The Hotel further notes that, despite having 467 rooms, which average approximately 10,000 room night rentals per month, there have been only four reported incidents involving bathtub falls since 2001. (*Id.* at ¶¶ 3-4.) None of these other reported bathtub falls involved the bathtub in Room 1708. (*Id.* at ¶ 6.)

Plaintiff insists that the absence of a slip-resistant mat or bathing surface was the cause of her fall. (PSMF at ¶ 19.) The Hotel insists that there was nothing wrong with the bathing surface in Room 1708 and, instead, that plaintiff's long history of knee problems,

6

including dislocation and buckling, was the cause of plaintiff's fall. (DSMF at ¶ 11.) Plaintiff responds that her knee had not caused her problems for years prior to the incident in question. (Resp. DSMF at ¶ 11.)

Plaintiff seeks to recover against Starwood Realty, CMBS, LLC; Starwood Operator I, LLC, d/b/a Sheraton Midtown Atlanta Hotel, and The Sheraton Corporation for what plaintiff contends is defendants' negligence in failing to keep the bathtub in Room 1708 in a safe condition. (Compl. ("Compl.") [1] at ¶ 5.) By way of damages, plaintiff seeks to recover for past and future lost wages, past and future medical expenses, and her pain and suffering. Plaintiff also seeks punitive damages and attorney's fees under O.C.G.A. § 13-6-11. (*Id.* at ¶¶ 34-35.)

This case is presently before the Court on plaintiff's and defendants' cross-motions for summary judgment and a host of discovery-related motions, including plaintiff's motion for extension of time to complete discovery, defendants' motion in limine to exclude plaintiff's expert, Jeffrey Gross, and defendants' motion in limine to exclude both evidence of special damages and the testimony of plaintiff's treating physician, Dr. John Rogerson. The Court will begin by addressing defendants' motion for summary judgment, as a granting of this motion would necessarily render the remaining motions moot.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the

8

district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[2] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

---

[2] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

9

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Defendants' Motion for Summary Judgment

Defendants move for summary judgment in their favor on all claims asserted by plaintiff. (Defs.' Mot. for Summ. J. ("Defs.' Summ. J.") [60] at 3.) In support of this motion, defendants assert that plaintiff has failed to present any evidence that a hazardous condition existed in Room 1708. (*Id.* at 6.) Even if the bathtub in 1708 were slippery enough to be considered a hazardous condition, defendants still maintain that they are entitled to summary judgment because they had no actual or constructive knowledge of this hazard, much less "superior knowledge" of the condition. (*Id.* at 5.) Defendants emphasize that although the bathtub in Room 1708 had been used by thousands of guests prior to plaintiff's stay, no one had ever reported a slip and fall in that room. (*Id.* at 6.)

In response, plaintiff insists that the Hotel had a "policy and/or procedure" for the use of either a non-slip strip or bath mat

AO 72A
(Rev.8/82)

in their bathtubs from which the Hotel deviated in renting Room 1708 to plaintiff without either safety measure in place. (Pl.'s Reply Br. in Opp'n to Defs.' Mot. for Summ. J. ("Resp. Defs.' Summ. J.") [68] at 2.) Plaintiff's expert infers this policy and/or procedure solely from two statements made in incident reports created by the Hotel for two slip and falls which occurred in rooms other than 1708. In the first of these statements dated August 21, 2002, the Hotel's incident investigator reported, "[t]he bathroom of room 601 was inspected by this officer and found that the non-slip stripe on bath tub was in place." (Pl.'s Mot. for Summ. J. ("Pl.'s Summ. J.") [59] at Ex. D.) In the second statement dated April 6, 2003, the Hotel's incident investigator wrote, "[o]n investigation, the bathroom and tub was examined. It was observed that the non-slip mat in the tub was in place." (*Id.* at Ex. E.)

Plaintiff's first theory of recovery is that defendants created the hazardous condition in Room 1708 by failing to place bath mats or other non-slip devices in their bathtubs. (Resp. Defs.' Summ. J. at 5.) Because defendants created the hazardous condition, plaintiff contends that Georgia law imputes constructive knowledge of the hazardous condition to defendants. (*Id.*) Plaintiff's second, alternative, theory of recovery is that the Hotel should have known that the particular bathtub was slippery and that its failure to be aware of this hazard suggests that the Hotel did not adequately

11

inspect its premises to discover possible dangerous conditions and to take reasonable precautions to protect invitees from dangers that are foreseeable. (*Id.* at 12.)

"[A]n owner or occupier of land is not an insurer of the safety of its invitees." *Lee v. Food Lion,* 243 Ga. App. 819, 820, 534 S.E.2d 507, 508 (2000). Consequently, in a premises liability case, "any recovery by plaintiff must be predicated upon defendant's superior knowledge of the perilous instrumentality." *Tassen v. Waffle House, Inc.*, 221 Ga. App. 755, 756, 472 S.E.2d 545, 546 (1996).[3] Indeed, as to an invitee, "[t]he true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury." *Garrett v. Hanes,* 273 Ga. App. 894, 895, 616 S.E.2d 202, 204 (2005). "The mere occurrence of an injury does not create a presumption of negligence." *Lee,* 243 Ga. App. at 820, 534 S.E.2d at 508. "[P]roof of a fall,

---

[3] In addition to the owner's superior knowledge of the hazard or defect at issue, "[i]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Wiley v. Liberty Southern, Inc.*, 243 Ga. App. 110, 110, 532 S.E.2d 456, 457 (2000). Though to prevail, plaintiff must prove all three of the above, the Court begins by considering whether defendants had superior knowledge of any hazard because this element is the basis of an owner's liability in a slip-and-fall premises liability case. Unless this basic threshold is met, there is no need to go any further in evaluating plaintiff's premises liability claim.

12

without more, does not give rise to liability on the part of a proprietor." *Hannah v. Hampton Auto Parts, Inc.*, 234 Ga. App. 392, 394, 506 S.E.2d 910, 913 (1998)(internal quotation and citation omitted). Thus, "[w]hen a defendant's knowledge of the hazard or defect is equal to or less than that of the plaintiff then the defendant is entitled to summary judgment as a matter of law." *Lee*, 243 Ga. App. at 821, 534 S.E. 2nd at 509.

Again, plaintiff has presented what appears to be two theories of recovery. Plaintiff's first theory is, essentially, that all hotel bathtubs are inherently dangerous without the presence of a non-slip strip or non-slip mat, and that it would be a violation of a hotel's duty of care not to provide at least one of these. Plaintiff's second theory is basically that, even if the above duty of care does not exist, the particular bathtub found in Room 1708 was so dangerously slippery that the hotel should have been on notice of this fact and done something to either alert plaintiff to this fact or fix the problem.

As to plaintiff's first theory, the Court will accept, for purposes of the present motion, that the bathtub in Room 1708 did not have a non-slip strip or non-slip mat. However, the Court has not been presented with any competent evidence that there is an industry standard requiring that all hotel bathtubs either have a non-slip strip or non-slip mat. Admittedly, plaintiff's expert states that

13

defendant failed to "provide its guests with an industry accepted slip-resistant bathing surface." However, this bald assertion of a standard is not supported by reference to any industry association published guideline or any other kind of publication or report. Just saying that something is or is not an industry guideline does not make it so. A true guideline is promulgated in such a manner as to make it known throughout an industry. The process of communicating a true guideline creates materials that can be submitted as evidence of that guideline, i.e. brochures, notices, training materials, articles, reports, booklets, official statements--none of which have been introduced as evidence in this case.

The Court does not mean to imply that the above are the only means of introducing competent evidence of an industry guideline. Clearly, however, Mr. Gross's bare, unsupported, and conclusory statement that there is a hotel standard or industry guideline requiring the presence of a non-slip strip or non-slip bath mat in every hotel bathtub is not evidence of that fact. Indeed, plaintiff's expert has offered no indication of where he derived the industry standard in question. In sum, plaintiff has offered no evidence or case authority to support her assertion that failure to provide a non-slip strip or non-slip mat in a hotel bathtub violates an industry standard and, hence, per se, violates a hotel's duty of care.

14

The above conclusion of the Court should come as no surprise to plaintiff. Indeed, during the course of discovery, defendant repeatedly objected to the expert "reports" submitted by Mr. Gross as vague, conclusory, and deficient. Rather than supplement Mr. Gross's conclusions, plaintiff elected to ignore the lack of support and explanation for her expert's opinions. Mr. Gross's affidavit in support of plaintiff's motion for summary judgment does nothing to correct this deficiency. Indeed, as an affiant, Mr. Gross merely reiterates his same unsupported and unexplained conclusion that, "Defendants failed to provide its guests with an industry accepted slip-resistant bathtub surface." (See Aff. of Jeffrey H. Gross ("Gross Aff.") at ¶ 9, attach. as Ex. F to Pl.'s Summ. J.)

Moreover, while the Court will assume the truth of plaintiff's assertion that defendant had, at least in some bathtubs, either installed non-slip strips or made non-slip mats[4] available, plaintiff

---

[4] The Court notes that plaintiff's reliance on the absence of a non-slip bath mat is particularly unpersuasive, as plaintiff has offered no evidence that she wanted a non-slip mat or would have used one had one been in the bathroom. These mats, possibly utilized by hundreds of previous guests, appear unhygienic and their use is often not very appealing. Indeed, it appears from plaintiff's deposition that plaintiff did not even notice the absence of a non-slip mat until, in response to plaintiff's reports about the fall, defendant's representatives asked plaintiff whether the bathroom had a non-slip mat. (See Dep. of Pl. attach as Ex. G to Pl.'s Summ. J.)

To the extent that plaintiff contends that the absence of a mat constituted negligence, plaintiff's knowledge of this omission was superior to defendant's, as plaintiff could readily see that there

15

has offered no case authority to suggest that defendant's failure to follow its own past voluntary practice constitutes negligence. If past practices were to automatically establish the standard of care, then proprietors would always try to meet only the minimum duty of care, for fear that if they were to reach higher, this extra effort would set a higher standard of care that they would then be obliged to follow in perpetuity. In short, plaintiff has failed to offer admissible evidence, or a persuasive legal theory, to establish that the absence of a non-slip mat or non-slip strip, by itself, either creates a dangerous condition or constitutes negligence.

Turning to plaintiff's alternative theory of liability, plaintiff contends that even if defendant is not *per se* liable as a result of defendant's failure to provide a non-skid tub surface or to place a mat in the bathroom, the defendant should have discovered, on its own, that the tub was slippery. As the defendant has noted, however, all bathtubs are slippery to some degree. Plaintiff has not attempted to offer any standard that would quantify the degree to

---

was no mat in the bathroom. *See generally Robinson v. Kroger Co.*, 268 Ga. 735, 737, 493 S.E.2d 403, 407 (1997) ("An invitee is charged with exercising ordinary care for personal safety and using ordinary care to avoid the effect of the owner/occupier's negligence after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it." *Id.* at 741, 409. Thus, while it would clearly have been better for the mat to have been provided in the room, had plaintiff wanted a bath mat, she could have requested one.

16

which the slipperiness of the tub in question exceeds what would be deemed an acceptable level of slipperiness. Indeed, plaintiff has offered no evidence, other than her own opinion, that the particular bathtub in Room 1708 was, itself, unreasonably slippery or dangerous.

Nor is there evidence of accidents or falls in this bathtub or any of the hotel's bathtubs that would suggest that the defendant was on notice that there was a problem. Specifically, the evidence indicates that there had been only four bathtub falls in five years (from 2001 to 2005) in other rooms in this 467 room hotel, which has approximately 10,000 room night rentals per month.[5] This sparse record of mishaps, by itself, would not put the defendant on notice of any potential problem with the bathtub in Room 1708, particularly since there is no evidence of any mishaps with that particular tub. That is, until the incident with plaintiff, no fall had ever been reported as occurring in the bathtub of Room 1708. As the Hotel's general manager, Tom Hiers, concluded: "Unfortunately, it is impossible to prevent every slip and fall in a bathtub." (Aff. of Tom Hiers ("Hiers Aff."), attach. as Ex. 1 to DSMF.)

While, under Georgia law, "the routine issues of premises liability are generally not susceptible of summary adjudication." "where the evidence is plain, palpable, and undisputed on the key

---

[5] The record does not indicate the circumstances underlying these four falls.

issues, summary judgment should be granted." *Carroll v. Georgia Power Co.*, 240 Ga. App. 442, 445, 523 S.E.2d 896, 899 (1999). For the above reasons, the Court concludes that plaintiff has failed to establish evidence of the defendant's negligence. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment [60].

### III. Plaintiff's Motion for Summary Judgment

Because the Court has determined that defendants are entitled to summary judgment on all claims asserted by plaintiff, the Court **DENIES** Plaintiff's Motion for Summary Judgment [59].

### CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff's Motion for Extension of Discovery Period [52]; **DENIES** Plaintiff's Motion for Summary Judgment [59]; **GRANTS** Defendants' Motion for Summary Judgment [60]; **DENIES as moot** Defendants' Motion in Limine to Exclude Plaintiff's Expert, Jeffrey Gross [62]; AND **DENIES as moot** Defendants' Motion in Limine to Exclude Special Damages and John Rogerson, M.D. [63].

SO ORDERED, this  /3  day of September, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE